And I'll call the last case up for argument this morning is Garcia and Valencia v. GEICO Casualty Insurance Company. You may proceed, Counsel. Thank you, Your Honors. Good morning. I'd like to save three minutes for rebuttal, if I may. My name is Ben Simino. I represent the plaintiffs and appellants. I'd like to touch on two points with my time today, if I may. The first is that there are tribal issues regarding whether GEICO reasonably regarded Hernandez as an additional insured under the Herrera policy. And second, even if GEICO did reasonably regard Hernandez as an additional insured, there are tribal issues regarding whether GEICO reasonably concluded that settling Herrera out for his policy limits would have left Hernandez bereft of coverage. Let me take this second issue first. Sure. Because there is California case law, which I take it you don't contest. You don't ask us to come up with a different California rule, that says that an insurer does not breach the implied covenant of good faith and fair dealing by making a policy limits offer but demanding in return a release of all of its insureds. So if Hernandez is appropriately an insured, I'm having great difficulty seeing what issue proved to prevent summary judgment. Would you help me with that first? Sure, Your Honor. So my response to that is that there is case law that actually qualifies that a little bit and says that if the settlement would offset the additional putative insured's liability, then it's a non-issue. And that case law is both from this court and from California, and it's the Parks and Flint cases, which we cited on page 7 and 13 through 15 of our reply, and then the Hunley case, which we discussed in both briefs. And those cases stand for the premise that here, if Geico had paid plaintiffs $15,000, the limits under Herrera's policy, that would have offset Hernandez's exposure. And not only offset his exposure, it would have extinguished it, because by law his exposure was capped at that same $15,000. So how would it have extinguished his exposure? Sure, because under California law, and here I'm referencing specifically its vehicle code, California vehicle code 17151A, and 17151A says outside of the employer-employee context, okay, this doesn't apply to, like, Domino's pizza drivers, but in the ordinary household context like this one, an owner, if they're just liable by virtue of being an owner of a vehicle, their liability is capped at $15,000. Right. 17150 caps liability at $15,000 for an owner who is vicariously liable. Was there any other theory alleged other than vicarious liability in this case? No. And was there a possibility of amendment to add something else, such as negligent entrustment? Was GEICO vulnerable to that risk? I suppose there's always that possibility, but it's GEICO that wants to come in here and use the four corners of the complaint as the be-all, end-all of their coverage determination. And so we say, if that's what you're going to do, well, then you have to look at it as it stands. And as it stands, it's just simply alleging an ownership vicarious liability theory against Hernandez, which is by law capped at the same. So I want to understand your position. If you had settled against Hernandez, if you'd settled against Herrera, I'm sorry, with GEICO, in other words, if they had accepted your counteroffer, is it your position that the maximum exposure of Hernandez would have been $15,000? Correct. So what I'm having difficulty understanding about this case, and unfortunately I've dealt with a bunch of these in the past, and even in practice dealt with them, it sounds to me like there's a game going on here. You go to GEICO and they say, no, our obligation is to settle on behalf of both, and you say, fine. Then you go to Anchor and you get the $15,000 that takes Hernandez out of the case. Why don't you go back to GEICO at that point and say, give me the other $15,000? Yeah. I mean, it sounds to me like this whole case was tried, and maybe there's nothing wrong with that or procedurally done in order to set up a bad faith claim rather than simply to get the $30,000 from the two insurers that they surely would have paid had you gone back to GEICO thereafter and said, look, you don't have to worry about Hernandez anymore. He's out of the case. Give me the $15,000. How do you respond to that? Yeah, I think it's a fair question, Your Honor, and I think I would bifurcate that a bit. I really don't agree with the premise that the initial offer and request, I guess you'd characterize it as a counteroffer to GEICO, was part of a game. I think that the plaintiffs really just wanted to get the $15,000 from both GEICO and Anchor General. So why didn't you just, I mean, this is like the last case. It's sort of, I understand the law may be different than the way the world operates. If you'd gotten both insurers in a room and said, we want $30,000, which is the limits of both your policies, and we know your clients both have no money, they would have surely both said yes. And so what you did was you did it sequentially, made an offer to GEICO that they couldn't accept and then made an offer to Anchor that they had to accept and never went back to GEICO then and said, now we've solved your problem. And so this may have no effect on the legality of your case. It just strikes me that there's something wrong here. I just wanted to lay that out for you. Yeah, and I appreciate that, Your Honor, and I think, again, I do bifurcate it very much in the beginning. I mean, I think that, well, let me say the threshold matter before I forget it, that I think your point is the best point, which is that this may be relevant to a bad faith analysis in this context by a jury, but I don't think it's relevant to the analysis here, whether there's tribal issues. And, again, I really do think we tried to do exactly what you suggested, which is go to both carriers and try to get as much as we could. I think we need to remember that in this posture, Anchor General had a reservation of rights and had filed a deck relief action and didn't look like it. Okay, so I wanted to ask you about that. Because Anchor has a reservation of rights, can GEICO really assume that Hernandez is not going to be held liable for greater than $15,000 in the case? Once it exhausts its policy, settling for Herrera, which is what you want, isn't there at least a possibility of some liability for Hernandez? Isn't he at least liable for $15,000 in addition to the $15,000 that Herrera puts in? I don't think he's liable for an additional $15,000. I think he's capped the $15,000 that would be offset by Herrera. And he gets credited. He gets credited, right. But let me ask you, Counsel, because the threshold question is whether there was – GEICO was reasonable in treating the father – now, I'm going to get the names mixed up, so let me say father and son-in-law – in treating father as an insured. Because then that triggers the whole line of cases about equal duty to the insureds. Now, one of your arguments is, well, there was a duty to investigate because there were serious questions about whether the father was even an appropriate insured under the GEICO policy. What is the best case that you have on the duty to investigate that sort of mirrored these facts? Because I don't think I've found a case that speaks to that situation in California law. Yeah, I would point you to page 21 of our opening brief on that. I think would be some of the best cases, plural. Those cases, I've read them, are duty to investigate in order to give coverage. In other words, there are cases where the insurance company didn't investigate very well, denied coverage, and the court said you should have – you know, if there's only the potential of coverage, you ought to cover it. I haven't found any case anywhere that found that an insurance company engaged in bad faith by extending coverage. Do you have one? Well, we've got cases where insurance companies were found to not engage in bad faith when they did exactly what we say GEICO should have done here. No, but that's a separate question. What you're saying here is that – you know, you're saying, well, GEICO should have taken the risk because there was good case law out there that would have allowed it not to be in bad faith. I think you've got to persuade us that they acted in bad faith by extending coverage to Hernandez. And so I'm trying to find a case anywhere that says that extending coverage is bad faith. It's slightly different, right, because once you determine, once we determine, or the district court determined that GEICO reasonably covered the father, then that triggers the Leto case, right? But if they had a duty to investigate under these circumstances, because it was inevitable that there would be a conflict between these two insureds. And so I haven't found a case that speaks to this situation where the insurance company has to undertake some investigation to figure out whether the father is an appropriate additional insured because there is this inevitably conflict between the two of them, right? And because they extended coverage, now they've left the son-in-law holding the bag of liability for $6 million. But there aren't cases like that because California is very protective of insureds and the cases kind of drive in the direction of providing coverage. So I haven't seen one like this where providing coverage then actually hurts the name insured, which is what happened in this case. Right, and rather than spend the time here, I'd prepare to do that on rebuttal and come with the cases because I do believe they exist. But I do want to push on this point because I think it's significant that we're sort of adopting the frame that the district court did, which is there's just sort of a limitless well of coverage and throwing it out to Hernandez doesn't necessarily detract from Herrera, but this case disproves that. Well, assume that there is case law about the duty to investigate. I'm reading the policy, and the policy just says resides, family member who resides. He's a family member, so that's clear. You know, he resides some of the time, but not all the time, wasn't residing at this point. I mean, if an insurance company had denied coverage based on the facts you said it should have uncovered, I kind of think I'd be sympathetic to a bad faith case from the additional insured that, come on, you know, resides doesn't mean at this precise moment, at this precise time. We interpret this policy against the insurer. So even assuming you're right about all those things, why was this an insufficient investigation? What more would they have found out? Simply that he spent half the time someplace else and that he was in Mexico at this time. But does that mean he doesn't reside? No, I don't think so at all, Your Honor. Well, he didn't have permission. It's the permissive use. It's a permissive use policy. So the whole question here, the whole game is did Hernandez give Herrera permission? Right, but now they've got to try the evidence of permissive use, right? So they've got to say, well, I've investigated, and he says he didn't want him to use it. The other guy says, oh, I could use it. Did they have to cover him under that circumstance? I think not. I mean, I think, you know, let's take a very obvious case. Let's say Hernandez gives a sworn notarized statement to Geico that says, I never in a million years gave Herrera permission to use my car, period, end of story. And that's in Geico's file. I can't see how Hernandez has a bad faith case at that point. Are you on summary judgment here? We are. Okay. So what evidence did you produce that there was no permission? We have the next best thing, which is one step, one rung below the sworn declaration or statement that I just described, which is we have Hernandez's own lawyer, his own insurance defense lawyer, who's probably pretty familiar with these issues, calling Geico and saying he did not give Herrera permission to use the car, period. Is that admissible evidence under Rule 56? Absolutely. I mean, it's in Geico's claim file. Well, I mean, there's lots of things. Geico's claim file may have something in it that says Judge Hurwitz is stupid, but that's not admissible evidence. Is his lawyer calling them up? His lawyer's trying to get this case settled, after all. And is his lawyer calling them up admissible evidence of the absence of permission? If the question is did Geico act reasonably and the lawyer for the putative insured called Geico and said the foundational predicate for insurance under this policy is not true, yes, that's admissible in an insurance bad faith case. If it's not, then. . . Did the lawyer call Geico and say my client would like not to be insured by you? Not in so many words. If he had, this would be an easy case, wouldn't it? If he had, it would be an easy case. I think it might be summary judgment for us. Please withdraw your coverage. I'm happy to rely on the contested anchor policy. Right. And, again, I would submit that we've got the next best thing, which I think maybe it's not as good at trial, but it should be good enough here at summary judgment. And we don't have just that. We've also got other evidence. One additional piece is that Hernandez expressly excluded Herrera under his own policy, which begs the question why would he exclude Herrera from coverage under the car that's at issue, only to then turn around and give permission to Herrera to do it. And the third piece is that we've got statements from Hernandez's daughters, one of whom is Herrera's wife, to both police and insurance investigators with the anchor general saying under no circumstances, absolutely unequivocally, no permission. And, in fact, one of the daughters said, in my opinion, he stole the car. So every piece of evidence that was available to Geico at the time, including the putative insurance own statement through his lawyer, said no permission and thus no coverage. So we're saying maybe there's some more difficult cases. But in this case, it was pretty darn clear to Geico that Hernandez didn't give Herrera permission, and, therefore, that there was no coverage under that provision. You're almost out of time. Do you want to save some? I would. I would love to. All right. I'll put a minute back on the clock for rebuttal. Thank you, Your Honor. Good morning. Mitch Tilner of Horvitz & Levy for Appellee Geico. Let me set the record straight or set the law straight here. We are not aware of any case in which an insurer can be liable for bad faith because it extended coverage to a putative insured in a doubtful case. No case finds that to be bad faith. But do you have to investigate to figure out whether it really is, in fact, doubtful? As counsel said, there are plenty of facts presented in this case, at least creating a triable question of fact as to whether any reasonable investigation was done. Yes, there certainly was a triable issue of fact whether Mr. Hernandez granted permission, and that is what his status as an insured turned on. That was at issue in the litigation. Plaintiff's complaint against Mr. Hernandez alleged he gave Herrera permission. The jury would have to decide that. So your position is that on the basis of the complaint, you were required to extend coverage to Mr. Hernandez because the complaint alleged that he, in effect, facts that would make him covered. That is exactly right. Well, you were required to provide the defense at a minimum and possibly count him as an additional insured under reservation of rights, right? But when you got the settlement offer, the problem is the conflict is such that failing to settle then leaves your named insured exposed for, as it turns out, quite a bit more than the policy limits. Your Honor, this Court has already addressed and resolved that problem. In the Harp case from 2015, the Court rejected an argument which is essentially identical to the argument you're hearing this morning from opposing counsel. In that case, one of the defendant's status as an insured depended on whether that defendant was vicariously liable for the other insured's conduct. That would make this defendant an insured. The underlying complaint alleged vicarious liability. So we wouldn't know until the jury returns a verdict whether this defendant was or was not an insured, and the company, in the meantime, gets a pretrial settlement proposal, just like in this case. And this Court held when a defendant's status as an insured will depend on the jury's findings in the action, the insurer acts properly and not in bad faith by treating that defendant as an insured for purposes of considering a pretrial settlement offer. That must be the rule because the carrier doesn't know yet whether this defendant is or is not an insured. The carrier is required to give the benefit of the doubt to this possible insured when it gets a settlement offer pretrial. I said this to your friend, and I want to have you respond to it, too. Here's what troubles me about this case. You've got two insurers. There's a total of $30,000 of coverage. It looks like a slam-dunk liability case for lots and lots of money. The two insurers apparently don't talk to each other and don't go to the other side and say, here's policy limits on both policies. Take the $30,000 and, you know, I'm sorry that we don't have more, but we don't. Is there any duty on the part of your client to do that? It just strikes me that both sides here are not operating in the real world. The information available to GEICO at the time it was considering this settlement offer was that Anchor General had denied coverage, and, in fact, it had an action pending seeking a declaration. Had they denied coverage, or were they covering under a reservation of rights? The information GEICO received was they denied coverage. Is that in the record? Yes, I believe so. But they provided the defense. They did provide a defense under a reservation of rights, and at the same time they filed a declaratory relief action seeking a declaration of no coverage, no duty to defend. So that was the situation at the time GEICO gets this offer. Okay, so let me, I know I'm dealing in the world of the hypothetical, but this is, we've got a lot of judges spending a lot of time on this case. This is what bothers me. At some point, Anchor throws in the towel, and they say, gee, if we can get out of this for $15,000, I don't care whether we have a good defense or not, and we do. At that point, do you go back to the plaintiffs and say, okay, we no longer have the Hernandez problem because he's been dismissed and they've settled. Here's our $15,000 on behalf of Herrera. Now, I know they didn't ask you for it, but don't you have some obligation at that point with your conflict having been cleared up to go back to them and avoid the possibility of a great excess judgment against your client, your insured Herrera? I don't believe the law imposes a duty on the insurer to go back and open a settlement discussion, but in any event. I mean, you have no duty to offer policy limits at that point. GEICO offered policy limits six days after a job decline. I understand, but with a condition. Now that condition, the condition that led them to turn it down has been solved. So why didn't they come back? Well, I know they didn't do it, and you didn't do it either. That's what troubles me about this case. Did you know that the father had settled out the case for $15,000? I believe GEICO found out in maybe August, which was about a month after the settlement interaction and had concluded.  Fell apart. So then at that point, GEICO considered putting your $15,000 because the impediment to settling against Herrera is now removed. The record doesn't reflect whether. Your legal position is your only duty is to not turn down a settlement policy limits demand. It's not to make a policy limits offer. Your Honor, plaintiffs knew that the $15,000 was on the table. Well, I understand what they knew, and I can put fault on both sides. I'm asking a legal question. The legal question is your position is that the duty of good faith and fair dealing only requires you to accept a policy limits demand under appropriate circumstances, not to make a policy limits offer. The duty is to accept a reasonable settlement offer. Not to make a reasonable. Where there is a significant risk of excess exposure. Not to make a reasonable settlement offer. That is correct, Your Honor. Is that a question for the jury to get to decide whether with the knowledge that GEICO knew it wasn't sufficiently protective of Herrera's interests? Your Honor, the law is clear. This Court's opinion in HARP is clear. The Court of Appeal in California in LATO is clear. In the situation in which GEICO found itself, it would have been bad faith to accept. No, we're talking afterwards. Let's assume that you acted reasonably in saying, well, we don't want to leave the father exposed to a greater liability, release them both. Let's say that's reasonable. You get summary judgment so far. But then once you find out that the father had settled the case, and now Herrera could also be released for the policy limits, you're saying there's no duty to circle back to plaintiff's counsel at this point. My question to you is, is that a jury question then? Whether that conduct in failing to reach out, knowing that a settlement would have released Herrera too at this point, and all impediments are gone, does the jury get to decide whether the failure to reach out to plaintiff's counsel constitutes bad faith? Your Honor, that is not plaintiff's claim. They haven't briefed it. We haven't briefed it. Those facts are all in the record. So we're trying to figure out whether this case should go to the jury or whether GEICO gets summary judgment affirmed at this point. You're right. Relevant. Yes, Your Honor. The district court didn't address this. They didn't plead it. We didn't brief it. No, I understand.  Their claim is that the bad faith was turning down their initial offer. That's their theory. But I guess whether or not it affects this case, it's of interest to us. We're both trying to figure out. Do you have a position? Yeah. Well, my position, without having researched it or briefed it, my initial reaction is there's no duty on the part of an insurer to go out and start a settlement conversation. The duty is to accept a reasonable settlement proposal from the plaintiff. I think that's true in the abstract. What I think we're both asking is this is not an abstract case. You already knew they wanted your policy limits. You already knew that they weren't willing to release Herrera in return for your policy limits and that the stumbling block was the possible liability of Hernandez. Now you know Hernandez is out of the case. So under those circumstances, is there a duty to go back under California law? I think this is a question of law, not a question of fact. So the question is did the California cases suggest that there might be a duty on your part at that point to reach out and say, okay, we've solved the Hernandez problem. Now, it may be that they would have said no. It may be what they were more interested in was a bad faith case against you for Herrera excess liability. But the question is, and at this point in the case, we may not know whether they would have taken that offer. But do you have a duty to make it? Your Honor, my understanding without having researched but based on many years of practicing insurance law is that there was no duty on the part of GEICO to then go back and reopen or make a new proposal to the plaintiffs. Your duty was only to respond to settlement proposals on the other side. Within policy limits. Yeah, a reasonable settlement proposal. I want to ask your friend that too because looking at case law, I can't find anything that suggests that either. But case law doesn't address the situation. We're trying to figure out what the California courts would do in a situation like this. Before your time runs out, can I have you address your opposing counsel's argument that a settlement with Herrera would have extinguished Hernandez's liability because there is that statute. You're asking that we rely on the complaint, and the complaint is proceeding on a vicarious liability theory. Yes. Thank you, Your Honor. I didn't intend to get to that. I'm glad you brought it up. Their argument is that had GEICO accepted the offer and settled for Herrera by paying the policy limits in exchange for a release of Herrera only, their position is that would have, quote, completely wiped away Hernandez's exposure under plaintiff's complaint. That's wrong, and it's inapposite. It's wrong because plaintiff's complaint against Hernandez and Herrera was for wrongful death. It sought the same damages against both defendants. But I thought that the California, and tell me if I'm wrong on the law, but I thought the California vehicle code caps owner's liability at $15,000 if the theory is vicarious liability, which was the theory that they advanced in the complaint. Your Honor, that was not the theory advanced. The words vicarious liability don't appear in the complaint. As an owner, as an owner of a vehicle, and somebody else takes your car, that's what vicarious, I don't know if the term vicarious liability was used. I didn't look for that because the way they described the owner of the car being the father, I had assumed that that's a vicarious liability case. But you're saying that that's not a fair assumption. That's not a fair reading of their complaint. The law is if the theory, if the only theory against the owner is that he owned the car and the driver caused injuries, well then the owner is liable vicariously up to $15,000. But if the owner himself is negligent, his liability is open-ended. And that was their case against Hernandez. They sought the same damages against both. They alleged Hernandez and Herrera were both negligent, both responsible for wrongful death. So if they really believed that settling with Herrera would have wiped out Hernandez's exposure, why didn't they release Hernandez? Why did they preserve their supposedly worthless claim against Hernandez? They were going after him for wrongful death. I didn't see any allegations in the complaint alleging that the father was independently negligent. Well, they alleged he was negligent and they alleged a cause of action against him for wrongful death based on his negligence. You construe this as a complaint that alleges negligent entrustment? You know, they don't use those words. It was a very cleverly drafted complaint, but the complaint could have been amended in one hour to allege negligent entrustment. And GEICO, looking at this complaint and considering, well, do we need to treat Mr. Hernandez as a potentially liable insured with open-ended exposure, they naturally gave him the benefit of the doubt. Yes, the complaint, if you read the complaint, doesn't say negligent entrustment. It simply says both defendants were negligent, both are responsible for the death of... Well, let me ask the question differently. They proposed to settle with Herrera. If they had settled with Herrera, would Hernandez still be liable under any theory of the case? Yes, he would be liable for his own negligence, which wasn't resolved by the Herrera settlement. But he wouldn't be liable vicariously, would he? I guess... See, I'm trying to figure out from their perspective why your offer doesn't solve their whole problem, because Hernandez wouldn't be vicariously liable if Herrera wasn't liable. Yeah, you know, I'm not sure about that. That's why I think what we've got going on here is this little sort of kabuki dance that... Let me just add a couple more points before I close out. Under the Leto case, this equal treatment rule doesn't depend on what the ultimate outcome might have been against Hernandez. The equal treatment rule is designed to prevent... That's a pretty key distinction. That's right. But we understand your argument. Okay, so Leto says there are harms involved if you let the plaintiff dictate which of two insurers is going to be released. The court says that's bad public policy. You can't let the plaintiff tell the insurance company, this is the insurer you should protect, this is the insurer we'd like to go after, so we'll release this one, we won't release that one. The court says that's bad public policy, and that's the position they're advancing. So for all these reasons, we ask the court to affirm. All right, thank you, counsel. Thank you. Thank you, Your Honors. A few quick points. So number one, I think it's true probably that there are no cases directly on point that say an insurer had engaged in bad faith because it didn't resolve this issue about one named and one potential insured. How I'm getting there is two steps. One step is, again, on page 21 of our brief, our reply, I'm sorry, our opening, we cite a number of cases that do draw an important distinction between named insureds and putative additional insureds. Named insureds, of course, were only involved in the Leto case, as Your Honor just pointed out. And then the second piece in that is that there's a duty to investigate that's owed to the named insured. And because having multiple insureds can create conflicts, as this case demonstrates, our premise is simple, that before an insurance company can just assume that someone else is an additional insured, they need to do a rigorous investigation to bear that out. And there may be marginal cases that are tough, but this is not one. This is a case where you have the putative insured coming to the carrier himself through his attorney and saying, I'm not covered. The HARP case, you know, that's not a really helpful case for my friends for two reasons. One, it establishes the point that I just made about the distinction between named and additional insureds being significant. That's in the preamble to that decision. And then also, it just doesn't have the facts to really demonstrate exactly where that liability theory comes in, but I think it is notable. Let me ask the question I asked your friend. Under your theory of the case, if GEICO had given you $15,000 in return for a settlement against Herrera, would Hernandez have been released? If GEICO gave... Yeah, in other words, if you had accepted, if they had accepted your counteroffer, your counteroffer was, give me your policy limits and I'll release Herrera. If that had occurred, under your theory, because Hernandez's liability is only vicarious, wouldn't Hernandez be out of the case? I mean, so legally, would there be anything left, any meat left on the bone in that existing complaint against Hernandez? No. So why didn't you take the offer? Well, because, you know, there was an opportunity here to... I mean, if the game... I mean, my point is that if you'd taken the offer on behalf of both, you wouldn't have hurt yourself in any case against Hernandez, would you? No, and I understand, Your Honor... So you turned down an offer that would have solved the entire problem and you're asking us to hold that by making that offer, they engaged in bad faith. That's what troubles me. Well, so there was another opportunity to get an additional $15,000, and I get that the carrier could say, well, there's nothing left of this claim, so we don't owe you anything, but we all know the realities of the cost of defense, etc. But what I'm actually asking this court to do is to just adopt a very simple rule that says that before insurance companies can go willy-nilly and decide that somebody else is an additional insured, which would subordinate the rights of their actual name insured... Okay, now, you're right. I'm assuming for purposes of my question that he is an additional insured. Sure. All right. Can you wrap it up, counsel? Yes, thank you, Your Honor. The only last point that I would emphasize is I would really urge this court, if it has any doubt, to go back and read the Hunley case, because I think this idea of extinguishing liability, amending complaints, is kind of a red herring, because Hunley just simply said, Look, it was 25K under the policy. If we pay that and we release our named insured, the additional insured gets that offset, and they get a defense. They get all that they're entitled to and all that they might have bargained for under this policy, so they really have no beef. There's no bad faith. That's the Hunley case, and I think that controls. So with that, Your Honors, we would ask that this court reverse and remand for trial. Thank you very much, counsel, to both sides for your argument. The matter is submitted, and that concludes our argument calendar this morning. We're in recess until tomorrow.
judges: NGUYEN, HURWITZ, Ezra